# IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA
### AT HUNTINGTON

**ERICA DIANE BLACK,**

     **Plaintiff,**

**v.**                             **Civil Action No. 3:16-cv-08835**

**NANCY A. BERRYHILL,**
**ACTING COMMISSIONER OF SOCIAL SECURITY,**

     **Defendant.**

## PROPOSED FINDINGS AND RECOMMENDATION

Pending before this Court is Plaintiff's Brief in Support of Judgment on the Pleadings (ECF No. 9) and Defendant's Brief in Support of Defendant's Decision (ECF No. 12). This is an action seeking review of the decision of the Commissioner of Social Security denying Claimant's application for supplemental security income (SSI) under Title XVI of the Social Security Act.

### Background

Claimant, Erica Diane Black, filed an application for SSI on July 8, 2013. Claimant alleged disability beginning July 14, 2012. The claim was denied initially on September 26, 2013, and upon reconsideration on January 21, 2014. Claimant filed a request for hearing on March 17, 2014. A video hearing was held on February 18, 2015. Claimant appeared in Huntington, West Virginia, and the Administrative Law Judge presided over the hearing from St. Louis, Missouri. The Administrative Law Judge (ALJ) denied Claimant's applications on February 26, 2015 (Tr. at 11-20). The Appeals Council denied Claimant's request for review on July 15, 2016 (Tr. at 1-5).

Subsequently, Claimant brought the present action seeking judicial review of the administrative decision pursuant to 42 U.S.C. § 405(g).[1]

Standard of Review

Under 42 U.S.C. § 423(d)(5), a claimant for disability has the burden of proving a disability. *See Blalock v. Richardson*, 483 F.2d 773, 774 (4th Cir. 1972). A disability is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable impairment which can be expected to last for a continuous period of not less than 12 months . . . ." 42 U.S.C. § 423(d)(1)(A).

The Social Security Regulations establish a "sequential evaluation" for the adjudication of disability claims. 20 C.F.R. § 404.1520 (2016). If an individual is found "not disabled" at any step, further inquiry is unnecessary. *Id.* § 404.1520(a). The first inquiry under the sequence is whether a claimant is currently engaged in substantial gainful employment. *Id.* § 404.1520(b). If the claimant is not, the second inquiry is whether claimant suffers from a severe impairment. *Id.* § 404.1520(c). If a severe impairment is present, the third inquiry is whether such impairment meets or equals any of the impairments listed in Appendix 1 to Subpart P of the Administrative Regulations No. 4. *Id.* § 404.1520(d). If it does, the claimant is found disabled and awarded benefits. *Id.* If it does not, the fourth inquiry is whether the claimant's impairments prevent the performance of past relevant work. *Id.* § 404.1520(e). By satisfying inquiry four, the claimant establishes a *prima facie* case of disability. *Hall v. Harris,* 658 F.2d 260, 264 (4th Cir. 1981). The burden then shifts to the Commissioner, *McLain v. Schweiker*, 715 F.2d 866, 868-69 (4th Cir.

---

[1] On March 2, 2018, the undersigned filed Proposed Findings and Recommendation (ECF No. 13). On March 19, 2018, Defendant filed Objections to the Proposed Findings and Recommendation (ECF No. 14). In a Memorandum Opinion and Order dated March 30, 2018, the District Judge rejected the Proposed Findings and Recommendation and remanded this case to the undersigned for consideration and resolution of Plaintiff's claims that: (1) "the [ALJ] failed to properly consider the medical evidence of record and the opinions of the consultative examining sources regarding Plaintiff's mental and physical impairments," and (2) "[the ALJ failed to] incorporate [the] same into the credibility determination and the residual functional capacity analysis." (ECF No. 15).

1983), and leads to the fifth and final inquiry of whether the claimant is able to perform other forms of substantial gainful activity, considering claimant's remaining physical and mental capacities and claimant's age, education and prior work experience.   20 C.F.R. § 404.1520(f) (2016).   The Commissioner must show two things: (1) that the claimant, considering claimant's age, education, work experience, skills and physical shortcomings, has the capacity to perform an alternative job, and (2) that this specific job exists in the national economy. *McLamore v. Weinberger*, 538 F.2d 572, 574 (4th Cir. 1976).

In this particular case, the ALJ determined that Claimant satisfied the first inquiry because she has not engaged in substantial gainful activity since the application date of July 8, 2013 (Tr. at 13). Under the second inquiry, the ALJ found that Claimant suffers from the following severe impairments: tachycardia; obesity; osteoarthritis of the lumbar spine; spondylosis of the lumbar spine at the L5-S1 level; bursitis of the bilateral shoulders; bipolar II disorder and anxiety disorder. (*Id.*)   At the third inquiry, the ALJ concluded that Claimant did not have an impairment or combination of impairments that met or medically equaled the level of severity of any listing in Appendix 1.   The ALJ then found that Claimant has a residual functional capacity to perform medium work with limitations (Tr. at 15).   The ALJ found Claimant would have the following limitations: Claimant can only occasionally climb ladders, ropes or scaffolds, kneel, crouch or crawl.   She can frequently climb ramps or stairs, balance and stoop.   She is further limited to simple, routine tasks that do not involve more than superficial interaction with the general public, coworkers and supervisors.   (*Id.*)   The ALJ found that Claimant is unable to perform any past relevant work (Tr. at 19).   The ALJ held that Claimant can perform work in positions such as a rack loader, furniture cleaner and produce weigher (Tr. at 20).   On this basis, Claimant's application was denied. (*Id.*)

Scope of Review

The sole issue before this court is whether the final decision of the Commissioner denying the claim is supported by substantial evidence. In *Blalock v. Richardson*, substantial evidence was defined as:

> [E]vidence which a reasoning mind would accept as sufficient to support a particular conclusion. It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance. If there is evidence to justify a refusal to direct a verdict were the case before a jury, then there is "substantial evidence."

*Blalock v. Richardson*, 483 F.2d 773, 776 (4th Cir. 1972) (quoting *Laws v. Celebrezze*, 368 F.2d 640, 642 (4th Cir. 1966)). Additionally, the Commissioner, not the court, is charged with resolving conflicts in the evidence. *Hays v. Sullivan,* 907 F.2d 1453, 1456 (4th Cir. 1990). Nevertheless, the courts "must not abdicate their traditional functions; they cannot escape their duty to scrutinize the record as a whole to determine whether the conclusions reached are rational." *Oppenheim v. Finch*, 495 F.2d 396, 397 (4th Cir. 1974).

A further review of the record reveals the decision of the Commissioner in this case is supported by substantial evidence.

Claimant's Background

Claimant was born on March 1, 1977. Claimant graduated from high school and completed cosmetology school in 1996 (Tr. at 38). On the date of the hearing, Claimant was 37 years old (Tr. at 41). Claimant is married with three children, ages seventeen, five and four (Tr. at 47). She has a driver's license. She drives her youngest son to school about a quarter of a mile from her house (Tr. at 48).

In the adult function report that was submitted on August 16, 2013, with her application for benefits, Claimant self-reported that she lived in a house with her children and spent her days caring for her household and her children (Tr. at 213-214). She claimed that she and her husband, as well as her sixteen year old daughter helped her care for her two younger children (Tr. at 214). Claimant and her husband both cook for the children. Claimant prepares breakfast and makes the "easier meals" and her husband cooks dinner (Tr. at 215). Although she was able to wash dishes and clean, her daughter helped her with chores that involved bending (Tr. at 215). When she went outside, she either walked or drove a car and shopped in stores for groceries (Tr. at 216). Her hobbies and interests included whatever her children were interested in at the time (Tr. at 217). Claimant reported difficulty with attention and the ability to follow written instructions (Tr. at 218). She admitted that she was able to walk what she referred to as "normal daily walking" (Tr. at 218).

In an updated report on November 19, 2013, Claimant acknowledged again that she cared for, fed, dressed and bathed her children (Tr. at 240). She also spent time with her children daily, stating that they were the only thing that she enjoyed (Tr. at 243).

<u>Medical Record</u>

When Claimant applied for disability benefits in July 2013, she was not undergoing mental health treatment and had not undergone treatment since 1993 (Tr. at 294). Claimant underwent an x-ray of her lumbar spine on August 13, 2013, at Pleasant Valley Hospital in response to complaints of low back pain (Tr. at 286). The x-ray showed spondylolysis without evidence of spondylolisthesis at L5-S1 (Tr. at 286).[2] In a consultative examination by Robert M. Holley, M.D., one week later on August 18, 2013, Claimant had some tenderness

---

[2] Spondylolysis is a condition in which there is a defect or stress fracture in posterior part of the spine known as the pars interarticularis. <u>Dorland's Illustrated Medical Dictionary</u> 1239 (26th ed. 1985).

over the L5-S1 area midline and lumbar pain with range of motion testing, but negative (normal) straight leg-raising and full (5/5) muscle strength in her upper and lower extremities (Tr. at 284-285). She had decreased range of motion of the bilateral shoulders upon abduction (Tr. at 284). She had a limited ability to squat due to pain, but only a minimally antalgic gait bilaterally and a normal ability to heel and toe walk despite obesity (Tr. at 285). Claimant was able to stand and walk with minimal difficulty (Tr. at 285).

Rogelio Lim, M.D., a state agency physician, reviewed the medical and other evidence of record and concluded on August 23, 2013, that Claimant remained able to perform a range of medium work[3] (Tr. at 82-83).

On September 10, 2013, the agency arranged for her to undergo a consultative psychological evaluation by Dr. William C. Steinhoff to develop the record regarding her mental impairment (Tr. at 287-291). Claimant complained of depression, panic attacks and poor sleep (Tr. at 287-291). She reported increased symptoms since her brother's death in July 2012 (Tr. at 288). She had taken the antidepressant medication Celexa in the past, but stopped taking it because it caused agitation (Tr. at 288). She continued to consume a moderate amount of caffeinated beverages. (*Id.*) In a mental status examination, Claimant had a depressed mood, a labile affect and difficulty with focus that she returned to the topic of her brother's death (Tr. at 289). She had poor insight, but average judgment (Tr. at 290). Claimant had mildly impaired immediate memory, markedly impaired recent memory and adequate remote memory (Tr. at 290). Dr. Steinhoff opined that Claimant had markedly impaired concentration, mildly slowed pace, moderately impaired persistence and markedly impaired social functioning (Tr. at 290).

---

[3] Uma Reddy, M.D., also a state agency physician, concluded the same in a subsequent review of the evidence on January 4, 2014 (Tr. at 95).

Chester Frethiem, Psy.D., a state agency psychologist, reviewed the medical evidence and other evidence of record on September 25, 2013, and concluded that Claimant was able to perform simple work that was not cognitively demanding and required minimal interaction with supervisors, coworkers and the general public (Tr. at 83-84).

On September 30, 2013, she sought treatment at the Woodland Centers, Inc. (Tr. at 292-331). In an assessment by Amanda S. Adams-Mock, Psy.D., Claimant complained of mood swings and severe irritability for several years (Tr. at 292-301). She indicated she took no medication (Tr. at 294). She explained that she had been depressed since her brother's death in July 2012, but before that she had been "on top of the world" for approximately two weeks (Tr. at 292). Claimant reported that she had a good relationship with her three children (aged three, four and sixteen) and her husband (Tr. at 292). She did not have a best friend, but had "pageant mom friends" (Tr. at 293). Claimant enjoyed playing with her children and stated that it was very important to do so (Tr. at 293). Claimant reported that sleep affected her ability to remain employed (Tr. at 294). Claimant was dressed appropriately and had good hygiene at the mental status examination (Tr. at 298). She was emotional during the assessment and her mood changed between depressed and irritated, but her behavior was appropriate (Tr. at 298). Dr. Adams-Mock diagnosed Claimant with a mood disorder and prescribed individual therapy and a medication evaluation (Tr. at 300). Additionally, Dr. Adams-Mock recommended further psychiatric evaluation. (*Id.*)

On December 19, 2013, a Medical Somatic Assessment was conducted at Woodland Centers Inc. (Tr. at 302-306). Claimant was still not taking her medication (Tr. at 303). She reported increased depression, irritability and anger outbursts, but presented as pleasant and cooperative (Tr. at 302-303). She was advised to comply with her medication regimen and

continue treatment (Tr. at 303). At a return visit in January 9, 2014, Claimant reported that she had been depressed since her father's death that week (Tr. at 308). She  was not taking her medication (Tr. at 309). She was prescribed Trileptal (an antiepileptic drug) and  Latuda (for treatment of depression related to bipolar disorder) and encouraged to be more  compliant with her medication (Tr. at 308).

At her return visit in March 28, 2014, Claimant had not filled her prescriptions due to lack of funds and requested a  less expensive medication (Tr. a t  306). Her medication was  changed  to  Lithium (for treatment of manic episodes of manic depression) and Risperdone (for treatment of  symptoms of bipolar disorder) and she was advised to return in one month (Tr. a t  306).

## Hearing Testimony

At the  hearing, Claimant testified that she stood 5'4" tall and weighed approximately 258 lbs. (Tr. at 47). Claimant testified that she smokes cigarettes and drinks caffeinated beverages (Tr. at 50). When the ALJ asked Claimant about her  diagnosis of  bursitis in her shoulders, Claimant testified that "[m]y shoulders hurt, but basically, I mean, I have more  mental  issues than I do physical, if that helps" (Tr. a t  4 3 , 44). She acknowledged that she had no difficulty sitting, standing, or walking (Tr. a t  58).

Claimant drives her son to  school located approximately a quarter of a mile from her house (Tr. at 48).  She testified that she does not drive often due to her anxiety.  (*Id.*) Claimant's husband drove her to the hearing (Tr. at 49).  Claimant complained of panic attacks, but acknowledged that her medication helped and  also helped to regulate her sleep (Tr. at 53-54). She had recently taken her children to the movies  and "did all right [sic]" (Tr. at 62). When asked about back pain, she again explained that her back pain  was more "from the mental

stress" (Tr. at 57). When the ALJ asked Claimant about the absence of medication for asthma or COPD on her medication list Claimant stated that "I had no idea I had COPD" (Tr. at 44).

At the hearing, the ALJ asked the vocational expert (VE) to consider an individual of Claimant's age, education and work experience, who could perform medium work with the ability to only occasionally kneel, crouch, crawl, or climb ladders, ropes, or scaffolds; frequently balance and climb ramps and stairs; and only simple, routine tasks that do not involve more than superficial interaction with the general public, coworkers, or supervisors (Tr. at 71). The VE responded that such an individual would be able to perform the unskilled jobs of rack loader, furniture cleaner and produce weigher, which exist in significant numbers in the national economy (Tr. at 72).

## Claimant's Challenges to the Commissioner's Decision

Claimant asserts that the ALJ failed to properly consider the medical evidence of record and the opinions of the consultative examining sources regarding Claimant's mental and physical impairments and incorporate the same into the credibility determination and the residual functional capacity (RFC) analysis (ECF No. 9). Claimant argues that the ALJ's analysis of Claimant's RFC is inappropriate and requires a reversal and/or remand in this matter. (*Id.*) In response, Defendant asserts that substantial evidence supports the ALJ's finding that Claimant could perform unskilled, medium work with postural and social limitations and was not disabled (ECF No. 12).

## Residual Functional Capacity

Pursuant to SSR 96-8p, the RFC assessment "must be based on all of the relevant evidence in the case record, including the effects of treatment and the limitations or restrictions imposed by the mechanics of treatment; e.g., frequency of treatment, duration, disruption to routine, side effects of medication. *Id.* at *5. SSR 96-8p explains that the RFC "'assessment must include a

narrative discussion describing how the evidence supports each conclusion, citing specific medical facts (e.g., laboratory findings) and nonmedical evidence (e.g., daily activities, observations).'" *Monroe v. Colvin,* 826 F.3d 176, 179–80. (4th Cir. 2016). (citing *Mascio v. Colvin*, 780 F.3d 632, 635 (4th Cir. 2015)). (quoting SSR 96-8p, 61 Fed. Reg. at 34, 478; see also *Clifford v. Apfel*, 227 F.3d 863, 872 (7th Cir. 2000) (observing that the ALJ "must build an accurate and logical bridge from the evidence to his conclusion"). The Fourth Circuit has held that "[a] necessary predicate to engaging in substantial evidence review is a record of the basis for the ALJ's ruling," including "a discussion of which evidence the ALJ found credible and why, and specific application of the pertinent legal requirements to the record evidence." *Radford v. Colvin*, 734 F.3d 288, 295 (4th Cir. 2013).

<u>Discussion</u>

An ALJ's findings "as to any fact, if supported by substantial evidence, shall be conclusive." *Walls v. Barnhart*, 296 F. 3d 287, 290 (4th Cir. 2002) (quoting 42 U.S.C. § 405(g)). Moreover, judicial review "of a final decision regarding disability benefits is limited to determining whether the findings are supported by substantial evidence and whether the correct law was applied." *Id.* (citing *Hays v. Sullivan*, 907 F.2d 1453, 1456 (4th Cir. 1990); *Preston v. Heckler*, 769 F.2d 988, 990 (4th Cir. 1985)). In reviewing the case to determine whether substantial evidence exists, this Court should not "undertake to re-weigh conflicting evidence, make credibility determinations, or substitute [its] judgment for that of" the agency. *Id. (quoting Mastro v. Apfel*, 270 F.3d 171, 176 (4th Cir. 2001)).

The ALJ assessed Claimant's residual functional capacity in accordance with the regulations. A claimant's residual functional capacity is the most that she can still do despite her limitations. *See* 20 C.F.R. § 416.945(a) *See also* Social Security Ruling 96-8p, 1996 WL 374184

at *5 (noting that relevant evidence includes medical history, medical signs and laboratory findings, the effects of treatment, reported activities, reported symptoms, and recorded observations, in addition to medical source statements).

The ALJ considered all of the medical and other evidence of record, including Claimant's subjective allegations, in determining her residual functional capacity for unskilled, medium work with postural and social limitations, consistent with the regulations (Tr. at 15-19). Regarding mental impairments, the ALJ considered Dr. Steinhoff's evaluation findings that Claimant had markedly impaired concentration, mildly slowed pace, moderately impaired persistence and markedly impaired social functioning was entitled to little weight (Tr. at 17-18). However, the ALJ pointed out that Claimant was not taking her psychotropic medication as prescribed at the time of her evaluation by Dr. Steinhoff (Tr. at 18). Treatment records from the Woodland Centers in September 2013, December 2013 and January 2014, all reflect that Claimant was not taking medication (Tr. at 292-301, 303, 309). Claimant self-reported in her Adult Function Report dated November 19, 2013, that she has a fear of medicines and of becoming addicted to medicines (Tr. at 246).

The ALJ found that Dr. Steinhoff's opinion was significantly inconsistent with the objective medical evidence of record and with Claimant's conservative course of treatment (Tr. at 17-18). *See* 20 C.F.R. § 416.927(c)(4) (providing for more weight where an opinion is consistent with the record as a whole). For example, Claimant's treatment records at the Woodland Centers show that she reported experiencing depression, anger outbursts, crying episodes and irritability, but she presented as pleasant and cooperative, with appropriate dress and good hygiene (Tr. at 297, 302-303). In addition, contrary to Dr. Steinhoff's opinion that Claimant was markedly impaired in social functioning, Claimant reported that she had friends

and she had a good relationship with her children and  her husband of 17 years (Tr. at 292-293). Claimant reported on her self-reported Adult Function Report dated November 19, 2013, that she spent time daily talking with her children and watching them play.  She reported that her children were the only thing that  she enjoyed (Tr. at 243).

      Also, contrary  to Dr. Steinhoff's opinion of Claimant's limitations,  Claimant was able to care for her young children, drive her son to school, perform light household  chores, cook, shop for groceries with her husband and attend her daughter's beauty pageants  (Tr. at 213-217, 240-243). Furthermore, the record shows that  Claimant  has  a  history  of  relatively minimal  and  conservative  mental  health  treatment.  Therefore,  the  ALJ  reasonably determined that Dr. Steinhoff's opinion was not consistent with the  evidence of record and entitled to little weight.

      Claimant argues that "everything the Plaintiff testified to regarding her mental condition is corroborated by the medical evidence of record and the Steinhoff opinion" (ECF No. 6) Claimant objects to the ALJ's finding that she was not fully credible in part because she was often noncompliant with her prescribed treatment. (*Id.*) The ALJ,  however, evaluated Claimant's subjective complaints of pain and other symptoms in accordance  with the regulations at 20 C.F.R. § 416.929. The regulations provide that an ALJ may not find a  claimant disabled based on subjective symptoms alone. 20 C.F.R. § 416.929(a). Rather, there  must be medical signs and laboratory findings that show that a claimant has a medical  impairment that could reasonably be expected to produce the pain or other symptoms alleged.  *Id.*  If so, the ALJ evaluates the intensity and persistence of a claimant's symptoms to determine how  those symptoms limit the capacity to work. 20 C.F.R. § 416.929(c). In evaluating the  intensity and persistence of symptoms, the ALJ considers all of the available evidence, including   such

evidence as a claimant's daily activities, medication, and treatment history.    20 C.F.R. § 416.929(c)(3).

Code of Federal Regulations § 416.929 states:

> How we evaluate symptoms, including pain.
>
> (a) *General.* In determining whether you are disabled, we consider all your symptoms, including pain, and the extent to which your symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence. We will consider all of your statements about your symptoms, such as pain, and any description your medical sources or nonmedical sources may provide about how the symptoms affect your activities of daily living and your ability to work (or, if you are a child, your functioning). However, statements about your pain or other symptoms will not alone establish that you are disabled. There must be objective medical evidence from an acceptable medical source that shows you have a medical impairment(s) which could reasonably be expected to produce the pain or other symptoms alleged and that, when considered with all of the other evidence (including statements about the intensity and persistence of your pain or other symptoms which may reasonably be accepted as consistent with the medical signs and laboratory findings), would lead to a conclusion that you are disabled. In evaluating the intensity and persistence of your symptoms, including pain, we will consider all of the available evidence, including your medical history, the medical signs and laboratory findings, and statements about how your symptoms affect you. We will then determine the extent to which your alleged functional limitations and restrictions due to pain or other symptoms can reasonably be accepted as consistent with the medical signs and laboratory findings and other evidence to decide how your symptoms affect your ability to work (or if you are a child, your functioning).
>
> (b) *Need for medically determinable impairment that could reasonably be expected to produce your symptoms, such as pain.* Your symptoms, such as pain, fatigue, shortness of breath, weakness, or nervousness, will not be found to affect your ability to do basic work activities unless medical signs or laboratory findings show that a medically determinable impairment(s) is present. Medical signs and laboratory findings, established by medically acceptable clinical or laboratory diagnostic techniques, must show the existence of a medical impairment(s) which results from anatomical, physiological, or psychological abnormalities and which could reasonably be expected to produce the pain or other symptoms alleged. In cases

decided by a State agency (except in disability hearings under §§ 416.1414 through 416.1418 of this part and in fully favorable determinations made by State agency disability examiners alone under § 416.1015(c)(3) of this part), a State agency medical or psychological consultant or other medical or psychological consultant designated by the Commissioner directly participates in determining whether your medically determinable impairment(s) could reasonably be expected to produce your alleged symptoms. In the disability hearing process, a medical or psychological consultant may provide an advisory assessment to assist a disability hearing officer in determining whether your impairment(s) could reasonably be expected to produce your alleged symptoms. At the administrative law judge hearing or Appeals Council level of the administrative review process, the adjudicator(s) may ask for and consider the opinion of a medical or psychological expert concerning whether your impairment(s) could reasonably be expected to produce your alleged symptoms. The finding that your impairment(s) could reasonably be expected to produce your pain or other symptoms does not involve a determination as to the intensity, persistence, or functionally limiting effects of your symptoms. We will develop evidence regarding the possibility of a medically determinable mental impairment when we have information to suggest that such an impairment exists, and you allege pain or other symptoms but the medical signs and laboratory findings do not substantiate any physical impairment(s) capable of producing the pain or other symptoms.

(c) *Evaluating the intensity and persistence of your symptoms, such as pain, and determining the extent to which your symptoms limit your capacity for work or, if you are a child, your functioning—*

(1) *General.* When the medical signs or laboratory findings show that you have a medically determinable impairment(s) that could reasonably be expected to produce your symptoms, such as pain, we must then evaluate the intensity and persistence of your symptoms so that we can determine how your symptoms limit your capacity for work or, if you are a child, your functioning. In evaluating the intensity and persistence of your symptoms, we consider all of the available evidence from your medical sources and nonmedical sources about how your symptoms affect you. We also consider the medical opinions as explained in § 416.920c. Paragraphs (c)(2) through (c)(4) of this section explain further how we evaluate the intensity and persistence of your symptoms and how we determine the extent to which your symptoms limit your capacity for work (or, if you are a child,

your functioning) when the medical signs or laboratory findings show that you have a medically determinable impairment(s) that could reasonably be expected to produce your symptoms, such as pain.

(2) *Consideration of objective medical evidence.* Objective medical evidence is evidence obtained from the application of medically acceptable clinical and laboratory diagnostic techniques, such as evidence of reduced joint motion, muscle spasm, sensory deficit or motor disruption. Objective medical evidence of this type is a useful indicator to assist us in making reasonable conclusions about the intensity and persistence of your symptoms and the effect those symptoms, such as pain, may have on your ability to work or, if you are a child, your functioning. We must always attempt to obtain objective medical evidence and, when it is obtained, we will consider it in reaching a conclusion as to whether you are disabled. However, we will not reject your statements about the intensity and persistence of your pain or other symptoms or about the effect your symptoms have on your ability to work (or if you are a child, to function independently, appropriately, and effectively in an age-appropriate manner) solely because the available objective medical evidence does not substantiate your statements.

(3) *Consideration of other evidence.* Because symptoms sometimes suggest a greater severity of impairment than can be shown by objective medical evidence alone, we will carefully consider any other information you may submit about your symptoms. The information that your medical sources or nonmedical sources provide about your pain or other symptoms (e.g., what may precipitate or aggravate your symptoms, what medications, treatments or other methods you use to alleviate them, and how the symptoms may affect your pattern of daily living) is also an important indicator of the intensity and persistence of your symptoms. Because symptoms, such as pain, are subjective and difficult to quantify, any symptom-related functional limitations and restrictions that your medical sources or nonmedical sources report, which can reasonably be accepted as consistent with the objective medical evidence and other evidence, will be taken into account as explained in paragraph (c)(4) of this section in

reaching a conclusion as to whether you are disabled. We will consider all of the evidence presented, including information about your prior work record, your statements about your symptoms, evidence submitted by your medical sources, and observations by our employees and other persons. If you are a child, we will also consider all of the evidence presented, including evidence submitted by your medical sources (such as physicians, psychologists, and therapists) and nonmedical sources (such as educational agencies and personnel, parents and other relatives, and social welfare agencies). Section 416.920c explains in detail how we consider medical opinions and prior administrative medical findings about the nature and severity of your impairment(s) and any related symptoms, such as pain. Factors relevant to your symptoms, such as pain, which we will consider include:

> (i) Your daily activities;

> (ii) The location, duration, frequency, and intensity of your pain or other symptoms;

> (iii) Precipitating and aggravating factors;

> (iv) The type, dosage, effectiveness, and side effects of any medication you take or have taken to alleviate your pain or other symptoms;

> (v) Treatment, other than medication, you receive or have received for relief of your pain or other symptoms;

> (vi) Any measures you use or have used to relieve your pain or other symptoms (e.g., lying flat on your back, standing for 15 to 20 minutes every hour, sleeping on a board, etc.); and

> (vii) Other factors concerning your functional limitations and restrictions due to pain or other symptoms.

(4) *How we determine the extent to which symptoms, such as pain, affect your capacity to perform basic work activities, or, if you are a child, your functioning).* In determining the extent to which your symptoms, such as pain, affect your capacity to

perform basic work activities (or if you are a child, your functioning), we consider all of the available evidence described in paragraphs (c)(1) through (c)(3) of this section. We will consider your statements about the intensity, persistence, and limiting effects of your symptoms, and we will evaluate your statements in relation to the objective medical evidence and other evidence, in reaching a conclusion as to whether you are disabled. We will consider whether there are any inconsistencies in the evidence and the extent to which there are any conflicts between your statements and the rest of the evidence, including your history, the signs and laboratory findings, and statements by your medical sources or other persons about how your symptoms affect you. Your symptoms, including pain, will be determined to diminish your capacity for basic work activities (or, if you are a child, your functioning) to the extent that your alleged functional limitations and restrictions due to symptoms, such as pain, can reasonably be accepted as consistent with the objective medical evidence and other evidence.

(d) *Consideration of symptoms in the disability determination process.* We follow a set order of steps to determine whether you are disabled. If you are not doing substantial gainful activity, we consider your symptoms, such as pain, to evaluate whether you have a severe physical or mental impairment(s), and at each of the remaining steps in the process. Sections 416.920 and 416.920a (for adults) and 416.924 (for children) explain this process in detail. We also consider your symptoms, such as pain, at the appropriate steps in our review when we consider whether your disability continues. The procedure we follow in reviewing whether your disability continues is explained in § 416.994 (for adults) and § 416.994a (for children).

(1) *Need to establish a severe medically determinable impairment(s).* Your symptoms, such as pain, fatigue, shortness of breath, weakness, or nervousness, are considered in making a determination as to whether your impairment or combination of impairment(s) is severe.(See § 416.920(c) for adults and § 416.924(c) for children.)

(2) *Decision whether the Listing of Impairments is met.* Some listed impairments include symptoms usually associated with those impairments as criteria. Generally, when a symptom is one of the criteria in a listing, it is only necessary that the symptom be present in combination with the other criteria. It is not necessary, unless the listing specifically states

otherwise, to provide information about the intensity, persistence, or limiting effects of the symptom as long as all other findings required by the specific listing are present.

(3) *Decision whether the Listing of Impairments is equaled.* If your impairment is not the same as a listed impairment, we must determine whether your impairment(s) is medically equivalent to a listed impairment. Section 416.926 explains how we make this determination. Under § 416.926(b), we will consider medical equivalence based on all evidence in your case record about your impairment(s) and its effects on you that is relevant to this finding. In considering whether your symptoms, signs, and laboratory findings are medically equal to the symptoms, signs, and laboratory findings of a listed impairment, we will look to see whether your symptoms, signs, and laboratory findings are at least equal in severity to the listed criteria. However, we will not substitute your allegations of pain or other symptoms for a missing or deficient sign or laboratory finding to raise the severity of your impairment(s) to that of a listed impairment. (If you are a child and we cannot find equivalence based on medical evidence only, we will consider pain and other symptoms under §§ 416.924a and 416.926a in determining whether you have an impairment(s) that functionally equals the listings.) Regardless of whether you are an adult or a child, if the symptoms, signs, and laboratory findings of your impairment(s) are equivalent in severity to those of a listed impairment, we will find you disabled. (If you are a child and your impairment(s) functionally equals the listings under the rules in § 416.926a, we will also find you disabled.) If they are not, we will consider the impact of your symptoms on your residual functional capacity if you are an adult. If they are not, we will consider the impact of your symptoms on your residual functional capacity if you are an adult. (See paragraph (d)(4) of this section.)

(4) *Impact of symptoms (including pain) on residual functional capacity or, if you are a child, on your functioning.* If you have a medically determinable severe physical or mental impairment(s), but your impairment(s) does not meet or equal an impairment listed in appendix 1 of subpart

> P of part 404 of this chapter, we will consider the impact of your impairment(s) and any related symptoms, including pain, or your residual functional capacity, if you are an adult, or, on your functioning if you are a child. (*See* §§ 416.945 and 416.924a-416.924b.)

The ALJ held that "After careful consideration of the evidence, the undersigned finds that the claimant's medically determinable impairments could  reasonably be expected to cause the alleged symptoms; however, the claimant's statements concerning the  intensity,  persistence, and limiting effects of her symptoms are not entirely credible for the reasons explained in this decision" (Tr. at 16).  The ALJ explained that "In terms of the claimant's alleged symptoms related to her impairments, it is reasonable she would experience some symptoms, but not of the severity alleged"  (Tr. at 17). The ALJ explained, for example, that although Claimant reported significant limitations  including anger, nervousness, and panic attacks, the record showed that despite urgings from her  treatment providers, she was often noncompliant with her prescribed medication.  (*Id.*)  Because Claimant's medical providers' repeatedly reported that she was not taking  medication and was  encouraged to do so, the ALJ reasonably considered Claimant's noncompliance as one factor in evaluating her subjective complaints.

Regarding her  physical  impairments, Claimant disagrees with the ALJ's residual functional capacity determination for medium work with postural limitations and contends that her impairments prevent her from performing any substantial gainful activity (ECF No. 6). Claimant points out that Dr. Holly found that Claimant walked with an  antalgic gait, suffered from shoulder pain and had lumbar pain and tenderness over the L5-S1  area and x-ray evidence of spondylolysis (Tr. at 284-286). The ALJ, however, considered  Dr. Holly's report and the x-ray findings, but did not find that they supported functional  limitations that would preclude Claimant's ability to perform medium work with postural  limitations (Tr. at 16-19).  Rather,

the ALJ explained that Claimant had a negative straight leg raising test, full strength in her upper and lower extremities, and several unremarkable physical examinations, all of which support a finding of medium work. (*Id.*)

The ALJ gave great weight to the opinions of the state agency medical consultants that Claimant could perform medium work (Tr. at 17). *See Chandler v. Comm'r of Soc. Sec.*, 667 F.3d. 356, 361 (3d Cir. 2011) (explaining that the opinions of state agency medical consultants merit significant consideration because they are experts in Social Security disability evaluation). The ALJ explained that their opinions were consistent with the objective medical evidence of record, including evidence that Claimant had spondylosis in the lumbar spine with tenderness and reduced range of motion of her shoulders, but normal straight leg raising and full strength in her extremities.

Consequently, the ALJ found that due to Claimant's intermittent and conservative treatment history, normal objective medical findings, admitted ability to sit, stand, and walk, and mental health symptoms amenable to medication treatment notwithstanding a reluctance to comply with prescribed treatment, that Claimant remained able to perform unskilled, medium work with postural and social limitations, including the representative jobs that the vocational expert identified. Therefore, because there was other work in the national economy that Claimant could perform, the ALJ appropriately determined that she was not disabled under the Act.

Claimant asserts that the ALJ should have accepted the VE's testimony that an individual who would be absent two or more days per month, would be unable to maintain full-time employment, in addition to other limitations included in the hypotheticals presented at the hearing (Tr. at 73 & ECF No. 6). However, the ALJ did not rely on the vocational expert

testimony in response to this hypothetical question because the record did not support a finding that Claimant would be absent from work two or more days per month. *See Walker v. Bowen*, 889 F.2d 47, 50 (4th Cir. 1989) (concluding that an ALJ's hypothetical question need only include those impairments supported by the record).

Conclusion

For the reasons provided above, the undersigned respectfully recommends that the District Judge find that the ALJ evaluated Claimant's subjective complaints of pain and other symptoms in accordance with the regulations at 20 C.F.R. § 416.929(a). An ALJ may not find a claimant disabled based on subjective symptoms alone. The ALJ considered all of the available evidence, therefore, the undersigned respectfully recommends that the District Judge find that the ALJ reasonably determined that Claimant is able to perform unskilled, medium work with postural and social limitations, including the representative jobs that the VE identified. Accordingly, the undersigned suggests that District Judge finds that the ALJ's decision is supported by substantial evidence.

For the reasons set forth above, it is hereby respectfully **RECOMMENDED** that the presiding Judge **DENY** Plaintiff's Brief in Support of Judgment on the Pleadings (ECF No. 9), **GRANT** the Commissioner's Brief in Support of the Defendant's Decision (ECF No. 12), **AFFIRM** the final decision of the Commissioner and **DISMISS** this matter from the Court's docket.

The parties are notified that this Proposed Findings and Recommendation is hereby **FILED** and a copy will be submitted to the Honorable Judge Robert C. Chambers. Pursuant to the provisions of Title 28, United States Code, Section 636(b)(1)(B), and Rules 6(d) and 72(b), Federal Rules of Civil Procedure, the parties shall have fourteen days (filing of objections) from the date of filing this Proposed Findings and Recommendation within which to file with the Clerk of this

court specific written objections, identifying the portions of the Proposed Findings and Recommendation to which objection is made and the basis of such objection. Extension of this time period may be granted for good cause shown.

Failure to file written objections as set forth above shall constitute a waiver of *de novo* review by the District Court and a waiver of appellate review by the Circuit Court of Appeals. *Snyder v. Ridenour*, 889 F.2d 1363, 1366 (4th Cir. 1989); *Thomas v. Arn*, 474 U.S. 140, 155 (1985); *Wright v. Collins*, 766 F.2d 841, 846 (4th Cir. 1985); *United States v. Schronce*, 727 F.2d 91, 94 (4th Cir. 1984). Copies of such objections shall be served on opposing parties, Judge Chambers and this Magistrate Judge.

The Clerk is directed to file this Proposed Findings and Recommendation and to transmit a copy of the same to counsel of record.

Enter: July 17, 2018

Dwane L. Tinsley
United States Magistrate Judge